**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **MATTHEW B. UMSTEAD,** | ) | **CASE NO. 1:26-cv-00074** |
| **Plaintiff,** | ) | |
| **v.** | ) | **JUDGE DAN AARON POLSTER** |
| | ) | **OPINION AND ORDER** |
| **KELLY ROSE, *et al.*,** | ) | |
| **Defendants.** | ) | |

Before the Court is a Motion for Judgment on the Pleadings filed by Defendants Kelly Rose, Matthew Koehler, David Bechtler[1], Deanna Reinhold, April Robinson, Debra Shrader, and Sherry Cornwell (collectively, the "Defendants"), under Federal Rule of Civil Procedure 12(c), on August 13, 2026 (the "Motion") (ECF Doc. 14), and Defendants' Supplemental Motion for Judgment on the Pleadings filed on August 19, 2026, to address new allegations against Defendant Reinhold (the "Supplemental Motion") (ECF Doc. 20) (collectively, the "Motions"). Plaintiff Matthew B. Umstead ("Umstead") responded to the Motions on August 31, 2026. ECF 21. In turn, Defendants filed their Reply on October 13, 2026. ECF Doc. 22. For the reasons discussed below, the Court **GRANTS** the Motions and dismisses Umstead's claims with prejudice.

## I. BACKGROUND

On May 23, 2025, this Court dismissed, pursuant to 28 U.S.C. §§ 1915(e) and 1915A, a complaint brought by Umstead and Umstead's son, Colton Umstead ("Colton"), both of whom were incarcerated in the Richland Correctional Institution ("Richland"), against Rose, Bechtler,

[1] The instant Complaint filed on January 12, 2026, misspells Defendant Bechtler's surname as "Beckler." *See* ECF Doc. 1 at 5; ECF Doc. 9 at 1 n.1.

Reinhold, Cornwell,[2] and seven other defendants.[3] *See Umstead v. Kelly Rose Inspector*, No. 1:25-cv-1051, 2025 WL 1489402 (N.D. Ohio May 23, 2025). In that case, Umstead alleged that the defendants violated Umstead's constitutional rights and committed "criminal crimes violations" by (1) acting "deliberately with indifference"; (2) "set[ting Matthew Umstead] up with drugs to cover up"; (3) hiring a hitman to murder Umstead; (4) committing "a corrupt pattern of criminal activity"; (5) "racketeered [illegible]"; (6) "conspiracy"; (7) "complicity"; (8) denial of right "to be free from cruel and unusual punishment"; (9) "denial of access to court"; (10) "deni[al of] due process"; (11) "deni[al of] equal protection of laws"; (12) "fail[ure] to protect"; (13) failure to "abate all the civil rights and criminal violations"; (14) "refus[al] of proper medical care and treatment"; (15) "harass[ment]"; (16) "retaliat[ing] against us by setting me up"; (17) denial of "hygiene [and] unsanitary conditions"; and (18) other "inhumane" conditions. *Id.* at *1.

This Court concluded that even when "liberally construed, the statements and allegations set forth in their complaint are so unclear, convoluted, and conclusory that they fail to meet basic federal pleading requirements necessary to state a claim in federal court or to give Defendants fair notice of the basis of their claims." *Id.* at *2.

On January 12, 2026, Umstead filed the instant Complaint against Defendants under 42 U.S.C. § 1983 ("Section 1983"), bringing the following claims: (1) First Amendment retaliation

---

[2] Bechtler's, Reinhold's, and Cornwell's surnames were misspelled "Bechlor," "Renhole," and "Cornell." *See Umstead v. Kelly Rose Inspector*, No. 1:25-cv-1051, 2025 WL 1489402, at *1 (N.D. Ohio May 23, 2025); ECF Doc. 14 at 21.

[3] Defendants request that this Court take judicial notice of the facts as stated in the Court's decision in *Umstead v. Kelly Rose Inspector*, No. 1:25-cv-1051, 2025 WL 1489402 (N.D. Ohio May 23, 2025). ECF Doc. 14 at 21 n.2. In assessing a Rule 12(c) motion, courts may review the complaint, matters of public record, the record of the case, and exhibits attached to the complaint. *Willard v. Ohio Operating Eng'rs Pension Plan*, 942 F. Supp. 2d 748, 751 (S.D. Ohio 2013) (citing *Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008)). The Court takes judicial notice and includes here, for context, a summary of Umstead's prior litigation available on public record. *See Saylor v. United States*, 315 F.3d 664, 667–68 (6th Cir. 2003) (determining that a court may take judicial notice of its own record in a prior case on which a claim preclusion argument rests); *Brooks v. City of Cleveland*, 795 F. Supp. 3d 987, 1022 (N.D. Ohio 2025) (noting that a court may take judicial notice of court proceedings without converting a Rule 12 motion into a motion for summary judgment). Nevertheless, the Court focuses on the sufficiency of the instant Complaint without reaching the parties' issue preclusion or claim preclusion arguments, which rely on reference to the *Inspector* case. *See* ECF Doc. 14 at 20-23; ECF Doc. 21 at 4-7.

and Fourteenth Amendment deliberate indifference and due process claims against Rose, Koehler, and Bechtler; (2) First, Sixth, and Fourteenth Amendment retaliation, court access, deliberate indifference, and due process claims against Reinhold and Robinson; and (3) First, Eighth, and Fourteenth Amendment denial of life, liberty, and freedom of speech; cruel and unusual punishment; and deliberate indifference to medical negligence claims against Cornwell. ECF Doc. 1 at 7-36. In sum, the Complaint alleges that Rose, Koehler, Bechtler, Reinhold, and Robinson acted improperly toward Umstead in retaliation for Umstead's filing of grievances. *Id.* at 7-30. In addition, the Complaint alleges that Cornwell violated Umstead's constitutional rights by denying medical accommodation and proper treatment for various injuries. *Id.* at 30-36.

Following a video case management conference held on April 15, 2026, the Court concluded that the Complaint—with Umstead's agreement—makes just two allegations, against Koehler and Reinhold. ECF Doc. 13 at 1. At a video status conference held on August 17, 2026, Umstead orally moved to amend the Complaint to include allegations of Reinhold's post-filing retaliatory conduct. ECF Doc. 19 at 1. The Court granted the oral motion and deemed the Complaint to make three claims: (1) in February 2025, Koehler improperly subjected Umstead to a strip search and then planted suboxone on a shelf in Umstead's cubicle, resulting in Umstead's serving two weeks in the "hole" ("Claim One"); (2) in November 2024, Reinhold hired a hitman to harm Umstead and Colton, who was likewise an inmate at Richland ("Claim Two"); and (3) in April 2026, Reinhold retaliated against Umstead for filing the instant action, claiming that Umstead threatened to harm her dog, which resulted in Umstead being sent to solitary confinement ("Claim Three") (collectively, the "Claims"). *Id.* at 1-2. The Court focuses, therefore, solely on the above Claims and allegations related to the Claims.

Defendants argue that (1) Umstead improperly joined unrelated claims; (2) the Eleventh Amendment bars claims for monetary damages against Defendants in their official capacities; (3) the Complaint fails to state a retaliation claim against Defendants; (4) Umstead has not alleged a protected liberty interest nor punishment in violation of that interest necessary for a Fourteenth Amendment due process claim; (5) the Complaint fails to allege facts to support the elements of a conspiracy claim; (6) Umstead does not present evidence to support allegations that Cornwell's medical treatment was improper, insufficient, or rises to the level of deliberate indifference;[4] (7) Defendants are entitled to qualified immunity because Umstead has not established that a constitutional right was violated; and (8) claim preclusion and issue preclusion bar the Complaint because Umstead already brought claims arising out of the same conduct against the same defendants before this Court. ECF Doc. 14 at 8-22; ECF Doc. 20 at 7-11; ECF Doc. 22 at 6-9.

## II. LAW AND ANALYSIS

A Rule 12(c) motion is analyzed using the same standard of review as a 12(b)(6) motion. *Blythe v. Schlievert*, 245 F. Supp. 3d 959, 965 (N.D. Ohio 2017) (citing *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008)). A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Additionally, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). A claim is facially plausible when pled with "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This standard "asks for more than a sheer possibility that a Defendant has acted unlawfully." *Id.* A "naked assertion" lacking "further factual enhancement" does not rise to the level of plausibility.

[4] Umstead's original allegations against Cornwell have been deemed stricken from the Complaint, and the Court will not consider them here. *See* ECF Doc. 13 at 1; ECF Doc. 19 at 1-2.

*Twombly*, 550 U.S. at 557. Similarly, reciting the elements of a cause of action will not suffice. *Iqbal*, 556 U.S. at 678.

When considering a motion for judgment on the pleadings, "a district court must construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claim that would entitle him to relief." *Johnson v. Collins*, 564 F. Supp. 2d 759, 762 (N.D. Ohio 2008) (quoting *Kottmyer v. Maas*, 436 F.3d 684, 689 (6th Cir. 2006)). However, the court "need not accept as true legal conclusions or unwarranted factual inferences." *Kottmyer*, 436 F.3d at 689 (citing *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 405 (6th Cir. 1998)). A Rule 12(c) motion is properly granted when "no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Tucker*, 539 F.3d at 549.

To plead a claim under Section 1983, a plaintiff must establish that (1) the challenged conduct was committed by defendants acting under color of law; and (2) the challenged conduct deprived plaintiff of a federal constitutional or statutory right. *Kottmyer*, 436 F.3d 684 at 688 (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 930 (1982)).

**A. Claim One**

Defendants do not contend that Defendants acted outside color of law. *See* ECF Doc. 14 at 11-12; ECF Doc. 20 at 7; ECF Doc. 22 at 7. Therefore, the only issue is whether Defendants deprived Umstead of his constitutional rights. *See Kottmyer*, 436 F.3d 684 at 688.

Umstead alleges that Koehler improperly subjected Umstead to a strip search and then planted suboxone on a shelf beneath a towel in Umstead's unit, resulting in Umstead's privileges being restricted for thirty days and serving two weeks in the "hole." ECF Doc. 1 at 8-14; ECF Doc.

19 at 1. The Complaint frames these allegations as constituting First Amendment retaliation and Fourteenth Amendment deliberate indifference and due process claims. ECF Doc. 1 at 7.

A government action violates the constitution when motivated in substantial part by a desire to punish and retaliate against an individual for exercise of First Amendment rights. *Thaddeus-X v. Blatter*, 175 F.3d 378, 386 (6th Cir. 1999) (collecting cases). To plead a First Amendment retaliation claim, the plaintiff must establish that (1) the plaintiff engaged in protected conduct; (2) Defendants took adverse action against the plaintiff that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* at 394. Protected conduct includes inmates' non-frivolous, non-manipulative complaints and grievances. *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000); *Maben v. Thelen*, 887 F.3d 252, 264 (6th Cir. 2018). Close temporal proximity between the protected conduct and the adverse action may properly create an inference that the motive behind the action was retaliatory. *Maben*, 887 F.2d at 268.

Here, the Complaint specifically alleges that, after leaving a commissary line, Umstead attempted to receive his I-Care food package at the "chow hall" and then walked toward his 2 Lower Unit when Koehler stopped Umstead, "started going off hollering at Umstead stating that Umstead was nothing more than a 'drug attic' [sic] and a 'drug dealer' and proceeded to belittle Umstead," escorted Umstead to the Shift Captains Office ("SCO"), and performed a strip search on Umstead, but found no contraband. ECF Doc. 1 at 8-9. Following this incident, Umstead filed a grievance against Koehler. *Id.* at 9. The next day, following a verbal altercation, Umstead filed another grievance against Koehler. *Id.* at 10.

Two days later, as the "yard" was closing at approximately 3:30 p.m., Umstead was returning to 2 Lower Unit when Officer Taylor, allegedly at Koehler's direction, took Umstead

into the officers' restroom and performed a strip search, finding no contraband. *Id.* at 11. Directly afterward, Security Response Team ("SRT") members entered 2 Lower Unit and searched Umstead's property, "destroying and disassembling food items," with Taylor explaining that "a phone call from up front" where Koehler worked directed the searches. *Id.* at 11-12. Umstead alleges SRT members "planted a 'half strip' of Suboxne [sic] under a towel in an attempt to have Umstead disciplined for drug possession and even went as far as to making this 'half strip' into smaller pieces so that these SRT Members could conform a conduct report against Umstead for not just possession of an intoxicating substance, but to increase the penalty into a more severe penalty as such as 'dealing narcotics on a state premises'" in a retaliatory conspiracy in violation of Umstead's constitutional rights. *Id.* at 12. At the close of a conduct report hearing in connection with this search and recovery of an intoxicating substance, Umstead's privileges were restricted for thirty days. *Id.* at 14. In addition, Umstead served two weeks in the "hole." ECF Doc. 13 at 1; ECF Doc. 19 at 1.

First, the Complaint does not identify the protected conduct for First Amendment retaliation claim purposes.[5] The Complaint likewise does not allege whether the strip search would deter a person of ordinary firmness from filing future grievances. Lastly, the Complaint only implies a retaliatory motive based on temporal proximity between a grievance and the strip search. But, given that one strip search predated the first noted grievance against Koehler, it is not plausible that Koehler's searches Umstead are motivated by Umstead's filing of a grievance. Therefore, without additional facts, the Court cannot reasonably infer a retaliatory motive behind the searches.

---

[5] The Complaint alleges that Umstead's prior action against Richland "somewhere around the year of 2017-2018 due to a slip-n-fall" motivated Rose to make "comments to deter Umstead for filing any further complaints," including threats of transfer, restrictions, and physical injury. ECF Doc. 1 at 7-8. However, this allegation does not encompass subsequent allegations of Koehler's improper strip searches and planting of suboxone. It defies logic that conduct six years prior would motivate adverse action in 2025. The Complaint also does not allege whether Umstead's grievances against Koehler constitute the protected conduct.

*See Maben*, 887 F.2d at 268. Accordingly, the Complaint fails to allege a First Amendment retaliation claim against Koehler.

Second, the Complaint does not set forth how the strip search or the unit search conducted outside of Umstead's presence, which allegedly led to planting of suboxone, deprived Umstead of due process rights under the Fourteenth Amendment. To invoke the Fourteenth Amendment's procedural protections and bring a due process claim, Umstead must demonstrate Koehler's actions infringed on an interest in life, liberty, or property while incarcerated. *See Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Punishment of incarcerated individuals, such as placement in "disciplinary segregation," does not significantly disrupt the inmate's environment or impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484, 486 (1995).

Umstead alleges that Koehler's strip searches were somehow unwarranted or improper. *See* ECF Doc. 1 at 9, 11; ECF Doc. 13 at 1; ECF Doc. 19 at 1. The Complaint then indicates that the search of Umstead's unit, which included destruction and disassembly of "food items," was improper. *See* ECF Doc. 1 at 12. The Complaint presumes that Umstead has a right to be present during a unit search and that his presence would have prevented the planting and recovery of the suboxone. *See id*. Finally, Umstead implies that serving two weeks in solitary confinement constitutes a deprivation of liberty, in violation of the Fourteenth Amendment. Umstead, however, fails to allege facts to support these suppositions. The Court and Defendants "should not have to guess at the nature of the claim asserted." *See Frengler v. Gen. Motors*, 482 F. App'x 975, 977 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).

Courts have also ruled that "routine" strip searches to detect contraband do not violate due process rights under the Fourteenth Amendment. *See, e.g.*, *Crump v. Curtis*, 50 F. App'x 217, 218

(6th Cir. 2002); *Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington*, 566 U.S. 318, 326–39 (2012). Here, Umstead has not alleged facts, which if proven, demonstrate that the strip searches in question were not routine, were overly invasive, or were not prompted by a suspicion of possession of contraband.

Umstead's objections to the unit search likewise lack foundation. As an initial matter, prison officials may prohibit inmates from observing a unit search. *Block v. Rutherford*, 468 U.S. 576, 590–91 (1984) (citing *Bell v. Wolfish*, 441 U.S. 520, 555, 560–61 (1979)) (clarifying that performing unit searches in the absence of inmates does not violate rights under the Fourth Amendment or the Due Process Clause of the Fourteenth Amendment). In addition, prison officials' alleged destruction of Umstead's food packaging during their unit search does not violate Umstead's Fourteenth Amendment rights. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (even intentional deprivations of inmate property do not violate the Fourteenth Amendment unless the institution refuses to provide a suitable post-deprivation remedy). Furthermore, the Complaint does not allege enough facts to enable the Court to sufficiently ascertain the circumstances of the unit search: who authorized it, who conducted it, when it occurred, how long it lasted, who else had access to the unit, who has access to suboxone, and how the allegations directly implicate Koehler as opposed to a different prison official. The Complaint only vaguely identifies SRT members as those who conducted the search and allegedly planted the suboxone. ECF Doc. 1 at 12. In effect, the Complaint does not support its bare conclusions with facts to allow a reasonable inference that Koehler violated Umstead's Fourteenth Amendment rights. *See Iqbal*, 556 U.S. at 678.

Third, Richland's punitive measures against Umstead do not meet the standard for atypical and significant hardship necessary for an incarcerated individual to invoke Fourteenth Amendment protections. *See Boles v. Taylor*, 182 F.3d 916, at *2, table op. (6th Cir. 1999) (concluding that

restricting an inmate's privileges for thirty days did not impose an atypical, significant hardship); *Sandin*, 515 U.S. at 485 (determining that serving thirty days in solitary confinement does not trigger due process protection or implicate a liberty interest because such placement does not present a "dramatic departure from the basic conditions" of one's sentence). Umstead does not allege that two weeks in solitary confinement constituted a major departure from ordinary prison life nor that restrictions to his privileges posed an atypical, significant hardship.

In support of his retaliation claim, Umstead argues that the action is "still in the development stages of the proceedings and will be further developed through the discovery." ECF Doc. 21 at 3. Facts needed to support Umstead's claims—discussed above—should be within Umstead's knowledge. That is, discovery would not likely produce evidence about the strip search or unit search which is missing from the Complaint. Regardless, Umstead is not entitled to discovery to withstand the Motions. *See Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 483 (6th Cir. 2020) (rejecting the argument that plaintiff may attach evidence to a brief in opposition to a motion for judgment on the pleadings and then demand time for discovery); *McPheeters v. United Servs. Auto. Ass'n*, 549 F. Supp. 3d 737, 743 (S.D. Ohio 2021) (concluding that a Rule 12(c) motion was not premature simply because "development of the record" through discovery could further "illuminate" the facts). The Complaint must plausibly, sufficiently plead the Claims at this stage. Yet Umstead has not.

Moreover, Umstead effectively conceded several allegations and claims. With Umstead's agreement, the Court deemed Claim One to encompass only Koehler's strip search and planting of suboxone. ECF Doc. 13 at 1; ECF Doc. 19 at 1-2. Claim One, therefore, does not include allegations related to a conduct report hearing or alleged failures to afford Umstead due process in connection with that hearing. *See* ECF Doc. 1 at 13-15. Because the Complaint has failed to

sufficiently plead a First Amendment retaliation claim or Fourteenth Amendment due process claim in connection with searches of Umstead's person and belongings, Claim One cannot survive Defendants' Rule 12(c) Motions.

**B. Claim Two**

Next, Umstead alleges that Reinhold hired a hitman to harm Umstead and Colton after Umstead filed a grievance against Reinhold for her allegedly improper search, testing, and contribution to a conduct report disposition. ECF Doc. 1 at 22-25. The Complaint characterizes these allegations as giving rise to First, Sixth, and Fourteenth Amendment retaliation, court access, deliberate indifference, and due process claims. ECF Doc. 1 at 20. Alternatively, Umstead refers to this conduct as a "conspiracy." ECF Doc. 1 at 20; ECF Doc. 21 at 3.

A conspiracy claim brought under Section 1983 requires an agreement between two or more persons who share in a general conspiratorial objective and single plan to injure the plaintiff by unlawful action. *See Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003) (citing *Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985)). In addition, an overt act must have been committed in furtherance of the conspiracy that injured plaintiff. *Id.*

Umstead alleges the following. Upon being found guilty at a conduct report hearing for possessing "jars of fruit" determined to be an "intoxicating substance," Umstead filed a grievance against Reinhold. ECF Doc. 1 at 22-25. After being informed of the grievance, Reinhold allegedly hired members of an "affiliation" known within Richland to "attack and kill" Umstead and Colton. *Id.* at 25. Umstead states that one affiliate solicited another affiliate to perform the hit. *Id.* at 25-26. The second affiliate then notified Umstead of the hit that Reinhold placed on him. *Id.* at 26. The second affiliate "made a deal" with the first affiliate to end the hit, in exchange for tobacco, if Umstead would apologize to Reinhold via a "kite." *Id.* Umstead messaged a third-party prison

official to relay to Reinhold that Umstead was "sorry" and had "no problem with her," which allegedly ended the hit being carried out by the affiliates. *Id.*

The Complaint does not provide facts to support the conclusion that Reinhold hired a hitman to harm Umstead and Colton as retaliation in violation of Umstead's protected First Amendment conduct. *See id.* at 25. Umstead offers improper "naked assertion." *See Twombly*, 550 U.S. at 557. The Complaint's convoluted recitation of two affiliates' negotiations between themselves and notifications to Umstead further suggests that Umstead's knowledge of the alleged hit stems entirely from the affiliates' word. *See* ECF Doc. 1 at 26. Indeed, as mysteriously as it appears to have come into being, the hit dissolved with a convenient payment of tobacco to the affiliates and a simple apology to Reinhold. *See id.*

The Court does not find this account plausible. In other words, the Complaint has not provided sufficient facts to enable the Court to reasonably infer that Reinhold actually ordered a hit. *See Iqbal*, 556 U.S. at 678. One affiliate reportedly told Umstead about an alleged hit, and Umstead accepted it as true without any supporting evidence. *See* ECF Doc. 1 at 25-26. Accordingly, the Court finds Umstead has not plausibly established that Reinhold took adverse action, as required to plead a First Amendment retaliation claim. *See Thaddeus-X*, 175 F.3d at 394.

In addition, Umstead has not alleged facts that show an agreement among co-conspirators to carry out an unlawful action to injure Umstead, as required to plead a Section 1983 conspiracy claim. *See Spadafore*, 330 F.3d at 854. The facts alleged provide only conjecture and an implausible series of events, in which a hit is resolved by providing tobacco and an apology. *See* ECF Doc. 1 at 26. This way, ***even if*** Reinhold solicited an unlawful act to injure Umstead, there was no agreement and no conspiracy to carry it out. The Complaint also does not allege Umstead

suffered an injury from this alleged conspiracy. Thus, even if no issue of fact exists, Umstead's conspiracy claim cannot survive the Rule 12(c) Motions.

As with Claim One, the allegations associated with Claim Two do not include facts related to Reinhold's allegedly improper search, testing, or contribution to Umstead's conduct report disposition. *See id.* at 22-25. Instead, with Umstead's agreement, Claim Two encompasses solely Reinhold's alleged hiring of a hitman. ECF Doc. 13 at 1; ECF Doc. 19 at 2. Thus, Umstead has not offered sufficient facts and has effectively waived the Complaint's original Sixth and Fourteenth Amendment court access, deliberate indifference, and due process claims. Umstead's allegations related to a First Amendment retaliation claim and Section 1983 conspiracy claim cannot meet the Rule 12(b)(6) standard or withstand a Rule 12(c) challenge.

**C. Claim Three**

Lastly, Umstead alleges that Reinhold retaliated against Umstead for filing the Complaint by claiming Umstead had threatened to harm her dog, which resulted in Umstead being sent to solitary confinement from April 15, 2026, through at least April 30, 2026. ECF Doc. 19 at 1-2; ECF Doc. 20 at 4. Also, according to Defendants' Supplemental Motion, while Umstead's property was being packed to move to the "hole," Umstead alleges his belongings were stolen. ECF Doc. 20 at 4. Finally, Umstead alleges that he is being transferred to a different institution as another act of retaliation. *Id.*

As Umstead did not formally amend the Complaint, the above information constitutes the full extent of the post-filing allegations connected to Claim Three. But Umstead has not alleged sufficient facts to plead a plausible claim. Umstead does not even allege that Reinhold lied about Umstead's threat. Moreover, Umstead does not allege that Reinhold notified prison officials of Umstead's supposed threat, that prison officials issued a conduct report, that the report noted the

supposed threat, that the conduct report constituted an adverse action with retaliatory motive, that the conduct report hearing violated Umstead's due process rights, that Umstead's stay in solitary confinement constituted a violation of Umstead's rights, what belongings are missing, who allegedly stole those belongings, who had access to Umstead's belongings during the move, and how a transfer to a different institution would qualify as an adverse action or implication of a liberty interest. In short, the Court agrees with Defendants that Umstead's factual allegations are unsupported and conclusory. *See id.* at 10.

The legal basis for Claim Three also remains unclear. Even if the Court were to assume that Umstead again brings First and Fourteenth Amendment claims here, the allegations do not support such claims. Umstead does not show that Reinhold possessed the requisite state of mind to retaliate against Umstead in violation of a First Amendment right. *See Thaddeus-X*, 175 F.3d at 394. Neither does Umstead allege that the temporal proximity between filing the Complaint and Reinhold's action enables an inference of retaliatory motive. *See Maben*, 887 F.2d at 268.

Separately, spending two weeks in solitary confinement does not implicate liberty interests under the Fourteenth Amendment. *Sandin*, 515 U.S. at 485 (determining that even serving thirty days in solitary confinement does not trigger due process protection or implicate a liberty interest). Even intentional deprivations of inmate property do not violate the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available, which cannot be determined until the institution refuses to provide a suitable post-deprivation remedy. *Hudson*, 468 U.S. at 533. And because Umstead has not specified to which institution he may be transferred, the Court cannot find that such transfer would constitute an atypical, significant hardship and implicate a liberty interest. *See Wilkinson*, 545 U.S. at 223–24 (concluding that transfer to Ohio's supermax penitentiary imposes an atypical and significant hardship, which implicates inmates' liberty

interests, given that institution's particular restrictions). Claim Three, like the other Claims here, registers as a series of inferences and bare grievances lacking the level of detail needed to plausibly plead a claim in federal court or to give notice to Defendants. The Court has struggled to parse Umstead's unclear, conclusory allegations and claims, and cannot find that the Claims satisfy the Rule 12(c) and 12(b)(6) pleading standard.

### D. Remaining Arguments

As a final matter, the Complaint's failure to state its claims obviates the need to address Defendants' Eleventh Amendment defense. *See Nair v. Oakland Cnty. Cmty. Mental Health Auth.*, 443 F.3d 469, 477 (6th Cir. 2006) (concluding that, because the defendants raised Eleventh Amendment immunity as an alternative defense, not a threshold issue, and because addressing the merits offered a more "straightforward way" to resolve the case, the sovereign-immunity question may be bypassed); *see also* ECF Doc. 14 at 11-12 (arguing that the Eleventh Amendment bars claims for monetary damages against Defendants in their official capacities); ECF Doc. 1 at 5 (bringing claims against Defendants in both their individual and official capacities).

Likewise, the Court will not reach the moot joinder, qualified immunity, issue preclusion, and claim preclusion arguments. *See* ECF Doc. 14 at 1, 8-9 (moving for judgment on the pleadings pursuant to Rule 12(c) and, in the alternative, arguing for amendment of the Complaint under Rules 20 and 18); *Mays v. City of Dayton*, 134 F.3d 809, 813 (6th Cir. 1998) ("If the court finds no valid claim pursuant to 42 U.S.C. § 1983, the court need not reach the issue of qualified immunity."); *Michael Shanker Tr. v. HSN LP*, No. 1:04-cv-756, 2005 WL 1223933, at *8 n.3 (N.D. Ohio May 23, 2005) ("Because Plaintiff has failed to provide evidentiary support for his claims, an analysis of claim and/or issue preclusion by this Court is unnecessary.").

## III. CONCLUSION

Because the Complaint has not proffered facts sufficient to support a reasonable inference that Defendants violated Umstead's constitutional rights, the Court hereby **GRANTS** Defendants' Motion for Judgment on the Pleadings and Supplemental Motion for Judgment on the Pleadings under Fed. R. Civ. P. 12(c).

**IT IS SO ORDERED.**

Date: October 28, 2026

*/s Dan Aaron Polster*
United States District Judge